UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

-----------------------------------------------------------------X
AARON BERLIN, and FEIGE ZARETSKY,

                Plaintiffs,

          -against-

LINDA K. MEIJIAS, individually and in her
official capacity, ELLEN W. MAURER,
GOLDMAN & MAURER, LLP, JUDGE
EDWARD A. MARON, individually and in his
official capacity, JUDGE SHARON M.J.
GIANELLY, in her official capacity,
John Doe 1-10, and Jane Does 1-10,

                Defendants.
-----------------------------------------------------------------X

**ORDER**
15-CV-5308 (JMA)

**AZRACK, United States District Judge:**

Pro se plaintiffs Aaron Berlin and Feige Zaretsky ("Feige") filed the instant suit asserting violations of federal and state law allegedly arising out of actions taken by the defendant in state court proceedings. These state court proceedings and a related proceeding in Bankruptcy Court were previously discussed in a March 30, 2017 decision by this Court that rejected Feige's appeal of an order issued by the Bankruptcy Court. (See Zaretsky v. Zaretsky, 15-CV-6600, March 30, 2017 Amended Order ("March 2017 Order"), ECF No. 9.) Defendants have all moved to dismiss this action on various grounds. For the reasons stated below, the Court grants those motions and dismisses the complaint.

Additionally, the Court imposes a filing injunction on plaintiffs as set forth below and **ORDERS plaintiffs to SHOW CAUSE, in writing, by** <u>**October 31, 2017**</u> **why this Court should not extend the filing injunction to preclude plaintiffs from filing in the United States District Court for the Eastern District of New York any further complaint or initial pleading against**

1

**any person or entity** without the Court's prior written permission.  Plaintiffs shall respond

to this ORDER TO SHOW CAUSE in writing.  Failure to respond to this ORDER TO

SHOW CAUSE by <u>October 31, 2017</u> will result in an injunction precluding plaintiffs from

filing in the United States District Court for the Eastern District of New York any further

complaint or other initial pleading against <u>any person or entity</u> without the Court's prior

written permission.

## I. BACKGROUND

The Court assumes the parties' familiarity with the Court's March 2017 Order and the

procedural history of the underlying state court action and bankruptcy proceeding.

To briefly rehash:  On June 16, 2014, Feige filed a Chapter 13 bankruptcy petition.  On

June 27, Feige filed a notice of removal that removed a pending state court action to the bankruptcy

court, which then treated the state court action as an adversary proceeding.  On August 4, 2014,

Harold Zaretsky ("Harold"), the plaintiff in the state court action, filed a motion to remand the suit

back to state court.  On September 4, 2014, the Bankruptcy Court granted a motion to dismiss

Feige's Chapter 13 proceeding.  On September 8, 2014, the Bankruptcy Court issued a docket

entry stating that the removed action was "MARKED OFF; MAIN CASE DISMISSED."

On November 28, 2014, Feige filed a motion with this Court to withdraw the reference to

the Bankruptcy Court.  On February 12, 2015, Harold filed a motion to remand in the Bankruptcy

Court, arguing, <u>inter</u> <u>alia</u>, the Bankruptcy Court's September 8, 2014 docket entry had already

remanded the adversary proceeding back to state court.  This Court denied Feige's motion to

withdraw the reference on August 6, 2015.  On October 28, 2015, the Bankruptcy Court ruled on

Harold's motion and

> **Ordered**, that the "marking off" of the Adversary Proceeding on September 8, 2014, based upon dismissal of the Debtor's chapter 13 case, constituted a remand of the Adversary Proceeding to the New York State Supreme Court as of September 8, 2014, and that no additional action was required to effectuate a remand.

Feige appealed that decision to this Court.  In the March 2017 Order, this Court:  (1) concluded that Feige had waived most of the arguments that she attempted to raise on appeal; and (2) affirmed the Bankruptcy Court's October 28, 2015 order, stating that "[t]he Bankruptcy Court's September 8, 2014 'marking off' of the instant adversary proceeding constituted a remand and no additional action was required to effectuate a remand."  (March 2017 Order at 6.)

Plaintiffs' instant suit concerns actions that occurred in state court between the filing of the Notice of Removal on June 27, 2014 and September 10, 2015.  During that time, the federal proceedings outlined above were occurring in the Bankruptcy Court and before this Court.

In the instant suit, plaintiffs name as defendants two state court judges, Justice Edward A. Maron and Justice Sharon M.J. Gianelli, who were involved in these state court proceeding, as well as a state court employee, Linda Mejias, who appears to be a law clerk for Judge Maron (collectively, the "Judicial Defendants").  Plaintiffs also name as defendants Goldman & Maurer, LLP, the law firm that represented Harold in state court, as well as Ellen W. Maurer, Harold's attorney in the state court action (collectively, the "Attorney Defendants").

Plaintiffs allege that the defendants conspired to ignore the removal of the state court action and allowed the action to proceed in state court despite the fact it had been removed.[1]  Specifically, plaintiffs allege that, on July 1, 2014, after both the Attorney Defendants and the state court

---

[1] 28 U.S.C. § § 1446(d) states:  "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and <u>the State court shall proceed no further unless and until the case is remanded</u>."  (emphasis added).

received a copy of Zaretsky's notice of removal,

> MAURER . . . together with Defendant LINDA MEIJIAS did maliciously conspire with willful intent to cause harm under color of law against the Plaintiff Feige Zaretsky, via conducting [an] ex-parte conversation, with Defendant ELLEN MAURER stating inter alia that the Plaintiff is deaf and learning disabled, and without legal counsel, and <u>that her federal actions are just a joke</u> <u>and will be ignored</u> <u>that the removal of the Proceeding by Plaintiff Feige Zaretsky will be fully ignored</u>, and they then continued to further discuss matters relating to the removed Proceeding.

(Compl. ¶ 33.) The complaint does not allege that any additional events occurred in state court until September 17, 2014 when the state court issued an order granting certain relief requested by Harold. (Compl. ¶ 35.) This occurred <u>after</u> the Bankruptcy Court "Marked Off" the adversary proceeding on September 8, 2014.

The complaint also alleges that the Judicial Defendants and the Attorney Defendants continued to conspire against the plaintiffs and took various other actions between September 17, 2014 and September 10, 2015. During this time, the Attorney Defendants filed motions and the state court judges issued orders. (Compl. ¶¶ 36–52.) The crux of plaintiffs' complaint is that, through this conspiracy, the defendants allowed the action to proceed in state court during this time even though the adversary proceeding had allegedly not yet been remanded back to state court. (<u>Id.</u>) Plaintiffs take the position, as they did in Feige's bankruptcy appeal, that the Bankruptcy Court's September 8, 2014 entry did not constitute a remand.

Plaintiffs' complaint alleges that defendants violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Plaintiffs also allege, under state law, abuse of process, injurious falsehood, civil conspiracy, and intentional infliction of emotional distress. To remedy these alleged violations, plaintiffs seek: (1) "declaratory relief declaring the proceedings in the state court relevant to this action a nullity and that Plaintiffs herein were being deprived of" their rights; (2) "injunctive relief

barring defendants from proceeding in the removed action"; and (3) monetary damages. (Compl.¶¶ 19-21, id. at 15.)

All of the defendants have moved to dismiss the complaint and have asked that the Court impose a filing injunction against plaintiffs. The Attorney Defendants also request costs for their motion.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and alteration omitted).

On a motion to dismiss, the Court may take judicial notice of public records, such as state court proceedings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

**B. The Judicial Defendants' Motion to Dismiss**

The Judicial Defendants have moved to dismiss the complaint arguing that: (1) they are entitled to absolute and qualified immunity; (2) plaintiffs' request for injunctive relief is moot and barred by § 1983; and (3) there is no basis for plaintiffs' request for declaratory relief.

Absolute immunity protects a judge from damage suits "unless he 'acted in the clear absence of all jurisdiction.'" McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 123–24 (2d Cir. 2010) (quoting Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir.1997)).

The two state court judges are entitled to absolute immunity concerning the allegedly improper actions that they took after the case was removed. Cf. Antelman v. Lewis, 480 F. Supp. 180, 184 (D. Mass. 1979) (dismissing § 1983 suit against state court judge and explaining that "any action taken by a state court judge in the interval between removal and remand is more in the nature of an act taken in 'excess of jurisdiction' than an act taken in 'clear absence of all jurisdiction'"). Mejias, a law clerk, is also entitled to absolute immunity. See McKeown, 377 F. App'x at 124 ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity . . . ."). The Judicial Defendants are also entitled to absolute immunity under New York law. Lombardoni v. Boccaccio, N.Y.S.2d 260, 261 (App. Div. 3d Dep't 1986) ("[O]nly those acts performed in the clear absence of any jurisdiction over the subject matter . . . fall outside the cloak of immunity.") Accordingly, all of the claims seeking monetary relief against the Judicial Defendants are dismissed.

Moreover, even if the Judicial Defendants were not entitled to absolute immunity, they would be entitled to qualified immunity. "Qualified immunity serves as a defense when [a defendant's] conduct does not violate clearly established law or it was objectively reasonable for the [defendant] to believe that his conduct did not violate such law." Estate of Jaquez by Pub.

Adm'r of Bronx Cty. v. City of New York, No. 16-1366, --- F. App'x ----, 2017 WL 3951759, at *2 (2d Cir. Sept. 8, 2017). The Judicial Defendants are entitled to qualified immunity because the state court did not take any actions until after the Bankruptcy Court "MARKED OFF" the adversary proceeding on September 8, 2017. There is no clearly established law indicating that such a statement by a bankruptcy court does not constitute a remand.

Plaintiffs' claim for injunctive relief against the Judicial Defendants is precluded by the text of § 1983, which states that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court. McKeown, 377 F. App'x at 124 ("To the extent that Appellant seeks injunctive relief against Judge Scarpino, moreover, Appellant does not allege that a declaratory decree was violated or that declaratory relief was unavailable, and so § 1983 relief is not available."); LeDuc v. Tilley, No. 05-CV-157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order.").

Finally, the Judicial Defendants also argue that plaintiffs' claim for a declaratory judgment against the Judicial Defendants must be dismissed. (See Pl.'s Mem. at 14–15.) The Court agrees. When a request for a declaratory judgment against a state court judge who is entitled to absolute immunity only concerns allegations of retrospective misconduct, with no continuing violation of federal law, the request for a declaratory judgment must be dismissed. See Cross v. King, No. 14-CV-7394, 2015 WL 6438819, at *4 (E.D.N.Y. Oct. 22, 2015) ("A declaratory judgment for alleged retrospective misconduct with no continuing violation of federal law is barred by the absolute

immunity doctrine."); Morales v. City of New York, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (dismissing claim for declaratory relief because the plaintiff "asks the [defendant] only to recognize a past wrong, which, in the context of declaratory relief, does not in itself 'amount to that real and immediate threat of injury necessary to make out a case or controversy'") (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)); cf. Muhammad v. Paruk, 553 F. Supp. 2d 893, 900 (E.D. Mich. 2008) (deciding, as a matter of discretion, not to exercise jurisdiction over a request for a declaratory judgment against a state court judge who presided over plaintiff's state court action). Here, the complaint alleges no continuing violation of federal law—the adversary proceeding has clearly been remanded back to state court, (see March 2017 Order), and, thus, the state court judges are no longer even arguably in violation of 28 U.S.C. § 1446(d), which states that, upon removal, "the State court shall proceed no further unless and until the case is remanded." Moreover, it does not appear that Judge Maron and Judge Gianelli are still presiding over the pending action in state court. See Zaretsky et al v. Maurer et al, 17-CV-03786 (E.D.N.Y.), Compl. ¶ 148 (indicating that Justice Joseph H. Lorintz is currently presiding over the state court proceeding involving Feige). That is further reason to dismiss plaintiffs' request for declaratory relief. See Thompson v. Ortiz, 619 F. App'x 542, 544 (7th Cir. 2015) (affirming dismissal of request for declaratory relief and explaining that the plaintiff, who sued a state court judge who presided over plaintiff's state court action, "has no use for a declaration of rights because he has no continuing relationship with" the judge and that the declaratory judgment sought would provide no relief to plaintiff);

Accordingly, plaintiffs' request for a declaratory judgment is dismissed.

## C. The Attorney Defendants' Motion to Dismiss

The Attorney Defendants have moved to dismiss the complaint arguing that: (1) plaintiffs' claims are barred by collateral estoppel; (2) plaintiffs failed to state plausible claims; and (3) Berlin lacks standing. The Court agrees that dismissal is warranted on all three grounds.

### 1. Collateral Estoppel

"Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

The Attorney Defendants argue that the Bankruptcy Court's October 28, 2015 decision—which affirmed that the September 8, 2014 "marking off" constituted a remand—has a preclusive effect and bars plaintiffs' claims. The Court agrees with the Attorney Defendants. All of the requirements for collateral estoppel are satisfied here.[2] Accordingly, the Bankruptcy Court's

---

[2]    Although not raised by either party, the Court notes that there is authority indicating that an unappealable remand order does not have preclusive effect. See Andrews v. Modell, 636 F. Supp. 2d 213, 218–19 nn. 4–6 (S.D.N.Y. 2008). However, even assuming remand orders that are unappealable cannot have preclusive effect, only remand orders pursuant to 28 U.S.C. § 1447(c) are unappealable under 28 U.S.C. § 1447(d). See Thermtron Prod., Inc. v. Hermansdorfer, 423 U.S. 336, 346 (1976). When, for example, "a district court remands claims to a state court after declining to exercise supplemental jurisdiction [under 28 U.S.C. § 1367(c)], the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)[,]" and, thus, is appealable." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 641, (2009).

Here, neither the Bankruptcy Court's September 8, 2014 entry or its October 28, 2015 order specify the ground on which it decided to remand the action. See Shapiro v. Logistec USA, Inc., 412 F.3d 307, 310 (2d Cir. 2005) (discussing how appellate courts determine whether a remand order was "made on the basis of a section 1447(c) ground"). However, it appears that the Bankruptcy Court's decision to remand was akin to instances where a district court declines to exercise supplemental jurisdiction over the remaining state law claims in a case and remands on that basis. (See March 2017 Order at 6, 7 n.1 (characterizing the Bankruptcy Court's remand decision as analogous to declining supplemental jurisdiction and noting that such a determination was clearly appropriate because there was no reason, under the circumstances, for the Bankruptcy Court retain the adversary proceeding once the bankruptcy petition was dismissed).) As such, the Bankruptcy Court's decision to remand was not pursuant to § 1447(c), and, therefore, was appealable and has preclusive effect.

October 28, 2015 decision (and this Court's subsequent affirmance of that decision) preclude plaintiffs from re-litigating the effect of the Bankruptcy Court's September 8, 2014 on the action.

In response to the Attorney Defendants' collateral estoppel argument, plaintiffs argue that if the September 8, 2014 "MARKED OFF" entry constituted a remand, then the Bankruptcy Court did not have jurisdiction to enter the October 28, 2015 order, which would be null and void. This argument does not help plaintiffs. If the September 8, 2014 "MARKED OFF" entry constituted a remand order, then plaintiffs' claims in the instant suit—which all concern the propriety of the state court continuing to hear the suit after the Bankruptcy Court's September 8, 2014 entry—would necessarily fail on the merits because, contrary to plaintiff's position in the instant suit, the adversary proceeding was remanded back to state court as of September 8, 2014.

Plaintiffs' only remaining arguments do not address the issue of collateral estoppel in any fashion. Rather, plaintiffs attempt to re-litigate the question of whether the Bankruptcy Court's September 8, 2014 docket entry constituted a remand order. Re-litigation of this issue is barred by collateral estoppel. Plaintiffs already had a full and fair opportunity to litigate the effect of the Bankruptcy Court's September 8, 2014's docket entry, both before the Bankruptcy Court in 2015 and through the bankruptcy appeal prosecuted in this Court. Accordingly, plaintiffs are precluded from re-litigating the effect of the Bankruptcy Court's September 8, 2014 docket entry.

---

Finally, 28 U.S.C. § 1452, which precludes appellate review of bankruptcy remands based on "any equitable ground," is also not a bar to appellate review of the Bankruptcy Court's decision to remand and, thus, does not alter that decision's preclusive effect. See Doddy v. Oxy USA, Inc., 101 F.3d 448, 455 n.3 (5th Cir. 1996) (explaining that when a "district court declines to remand a case that was bankruptcy-related when removed but has since ceased being bankruptcy-related, "the court's remand authority switches from that under § 1452 to that under § 1367," and that such a decision "is subject to review on appeal")

## 2.  Failure to State a Plausible Claim

### i.  *Federal Claims*

Plaintiffs attempt to bring federal claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, but fail to allege plausible claims under any of these statutes.

Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).  Plaintiffs, however, can establish that private actors such as the Attorney Defendants were acting under color of state law by proving either:  "(1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor." Young v. Suffolk Cty., 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013).  "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." Anilao v. Spota, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting Bang v. Utopia Restaurant, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)).  Alternatively, to show that there was a conspiracy between a private actor and the state or its agents, a plaintiff must provide evidence of "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages." Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (quoting Ciambriello v. Cty. Of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002)).  These two methods of demonstrating state action—"joint action" and "conspiracy with"—are "intertwined" and overlap in significant respects. Harrison v. New York, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) (quoting Stewart v. Victoria's Secret Stores, LLC, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012)).

Here, plaintiffs attempt to bring § 1983 claims against the Attorney Defendants based on a theory that they conspired with the Judicial Defendants, who are state actors. However, the factual allegations in plaintiffs' complaint concerning the alleged conspiracy between the Attorney Defendants and the Judicial Defendants are utterly implausible. Plaintiffs allege that upon receiving a copy of the notice of removal on July 1, 2014, Maurer and Mejias immediately conspired to ignore the notice of removal. Despite this alleged conspiracy to ignore the notice of removal, none of the defendants took any further action in state court until the Bankruptcy Court "MARKED OFF" the adversary proceeding on September 8, 2014—more than two months later. In light of that undisputed fact, plaintiffs' allegations that the defendants conspired to unlawfully proceed in state court are implausible. It is also implausible that all of these defendants engaged in an unlawful conspiracy to violate plaintiffs' rights based on the Bankruptcy Court's September 8, 2014 order, which was, at best ambiguous, and which the Bankruptcy Court itself subsequently interpreted in the manner urged by the defendants.

Plaintiffs' claims under § 1985 and § 1986 also fail. To be actionable under 42 U.S.C. § 1985(3), an alleged conspiracy must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)). Plaintiffs' § 1985 claim fails because they have not alleged any discriminatory animus. Plaintiffs' § 1986 claim also fails because "a § 1986 claim is contingent on a valid § 1985 claim." Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996).

With respect to 42 U.S.C. § 1988, that statue concerns awards of attorney fees for successful civil rights plaintiffs and does not establish a separate cause of action. Therefore, plaintiff's § 1988 claim must be dismissed.

Finally, the Court notes that plaintiffs' complaint is premised on the notion that they can bring a § 1983 action against a state court judge (and any alleged co-conspirators) if the state court judge violates 28 U.S.C. § 1446(d) by proceeding in a removed action before it is remanded back to state court. The Court has found no authority indicating that 28 U.S.C. § 1446(d)'s bar on a state court proceeding after removal is enforceable through a § 1983 suit. Section 1983 "is enforceable only for violations of federal <u>rights</u>, not merely violations of federal laws." <u>Torraco v. Port Auth. of New York & New Jersey</u>, 615 F.3d 129, 136 (2d Cir. 2010) (emphasis in original). It is at least questionable whether § 1446(d) is enforceable in a § 1983 suit because, <u>inter alia</u>, a federal court presiding over a removed case presumably already has the power to award sanctions against an attorney who attempts to circumvent removal by continuing to litigate in state court as well as the power to enjoin any such state court proceeding. <u>See</u> <u>Blessing v. Freestone</u>, 520 U.S. 329, 340–41 (1997) ("Because [the inquiry into whether a right is enforceable under § 1983] focuses on congressional intent, dismissal is proper if Congress specifically foreclosed a remedy under § 1983. Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.") (citations and internal marks omitted). It is ultimately unnecessary for the Court to decide this question because plaintiffs' claims fail on multiple other grounds.

### ii. Plaintiffs' State Law Claims

Plaintiffs also allege state law claims for abuse of process, injurious falsehood, civil conspiracy, and intentional infliction of emotional distress. All of these state law claims appear to be premised on the purported conspiracy between the Attorney Defendants and the Judicial Defendants to ignore the notice of removal. As the Court has already concluded that plaintiffs

failed to plausibly allege such a conspiracy and that plaintiffs are collaterally estopped from re-litigating whether the September 8, 2014 docket entry constituted a remand order, these state claims must be dismissed.

In opposing the Attorney Defendants' argument that plaintiffs fail to state any claims, plaintiffs focus on allegedly false affidavits that the Attorney Defendants submitted to the state court. Specifically, plaintiff argues that:

> Defendants' scheme, which had multiple components, amongst them was a "unitary course of conduct" that depended on false affidavits, One illustration, is in its Affirmation in support by ELLEN W. MAURER, in the post judgment action, Harold Zaretsky v. Feige Zaretsky under Nassau County index number 202667/2004. The Order to Show Cause was signed on April 30, At [paragraph 17] ELLEN W. MAURER, argue in pertinent part: Significantly, there is no need for Defendant to continue to reside in the Former Marital Residence since only one of the parties' three children resides with the mother See the Family Court's "FINAL ORDER OF CUSTODY AND PARENTING TIME" by Hon. MERIK R. AARON dated April 18, 2012 copy of same is attached as EXHIBIT "A" which clearly show the opposite.

> additionally ELLEN W. MAURER have routinely advised and encouraged to alienate the youngest son in order to achieve that goal and for the purpose to continues the victimization

(Pls.' Opp'n to the Attorney Defendants' Mot. to Dismiss at 15–16.)[3]

These allegations about false affidavits that include misrepresentations about Feige's children are found nowhere in the complaint. The only specific falsehoods alleged in the complaint concern Maurer's allegedly false representation to the state court that the "the removed Proceeding was no longer pending in the Bankruptcy Court." (Compl. ¶ 42.) The complaint's conclusory assertions that the Attorney Defendants brought unidentified "false" claims are insufficient to survive plausibility review under Iqbal. Similarly, the other conclusory allegations in the

---

[3] Because this argument appears to concern alleged misconduct by the Attorney Defendants that was independent of the state court judges, the Court assumes that this argument concerns plaintiffs' state law claims against the Attorney Defendants.

complaint are insufficient to plausibly allege any state law claims.  (See, e.g., Compl. ¶ 16 (alleging, in conclusory fashion, that the state court action brought by the Attorney Defendants was "false" and "fraudulent" and was "motivated solely" to prevent the plaintiffs from pursuing a prior RICO action that they had filed by "entangling them in . . . illegal, abusive litigation").

### 3. Berlin Lacks Standing

The Attorney Defendants argue that Berlin, who was not a party to the action in state court, lacks standing to bring any of the claims at issue.  The Court agrees and dismisses Berlin's claims under Federal Rule of Civil Procedure 12(b)(1).  In the complaint, Berlin alleges that he is "being damaged as an equitable owner/partner in the real property at 10 Chestnut Drive, Plainview, New York," which was at issue in the state court action.  (Compl. ¶ 58.)  Berlin, however, has not offered any factual allegations (or evidence) to support his conclusory assertion that he has an equitable or partner interest in the property.  Moreover, Berlin's allegations that he is Feige's "personal caretaker [and] financial provider" and is "responsible for her safety and well being," (id.), do not establish that he has standing to bring any of the claims at issue in this suit.

In any event, even assuming for the sake of argument that Berlin does have standing, his claims would still fail because, as explained earlier, they are not plausible. Moreover, the Court's conclusions concerning collateral estoppel would also apply to Berlin because, although he was not a party to the state action/adversary proceeding, the allegations above, if true, would establish that he was in privity with Feige, which is sufficient to trigger collateral estoppel.  See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 327 F.3d 173, 184 (2d Cir. 2003) (explaining that collateral estoppel applies to a party to a previous adjudication and to that party's "privies").  In addition, Berlin appears to have drafted every filing submitted on Feige's behalf in the adversary proceeding as well as the other filings

Feige has made in this Court and the Bankruptcy Court. That fact would further support a finding

that Berlin and Feige are in privity for purposes of collateral estoppel.

### 4. Defendants' Requests for Filing Injunctions and Costs

Both the State Court Defendants and the Attorney Defendants have requested that filing

injunctions be imposed on plaintiffs. The Attorney Defendants also argue plaintiffs should have

to pay the costs for their motion to dismiss.

In determining whether to enter an order restricting a litigant's access to courts, the

following factors must be considered:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious,
> harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation,
> e.g., does the litigant have an objective good faith expectation of prevailing?; (3)
> whether the litigant is represented by counsel; (4) whether the litigant has caused
> needless expense to other parties or has posed an unnecessary burden on the courts
> and their personnel; and (5) whether other sanctions would be adequate to protect
> the courts and other parties.

In re Koziol, 669 F. App'x 63, 63–64 (2d Cir. 2016) (quoting Iwachiw v. N.Y. State Dep't of

Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005)).

The instant suit and the other numerous actions that plaintiffs have filed over the last

several years have their genesis in the bitter matrimonial dispute between Feige and Harold.

(Harold Zaretsky v. Feige Zaretsky, Supreme Court, Nassau County, Index #202667-2004). In a

subsequent state court action, Harold and his family (collectively, the "Zaretskys"), and his

family's corporation, Maxi-Aids, Inc., obtained a $1,290,000 default judgment against Feige and

Berlin for defamation. (Elliot Zaretsky, et al. v. Aaron Berlin, et al., Nassau County Supreme

Court, Index #17869-2008; see Berlin v. Zaretsky, 15--CV-14, 15--CV-15 (E.D.N.Y.), Order dated

30, 2015 Order (recounting the history of the defamation litigation).) In that action, the state court

issued a filing injunction in December 2011 against Feige and Berlin that prohibited them from

filing, without prior court approval, any motions or orders to show cause in three actions that were pending, at that time, in state court.  (The Judicial Defendants' App'x, A-12–A-13, ECF No. 27.)

Both Feige and Berlin filed for bankruptcy in attempts to have the $1,290,000 defamation judgment against them discharged.  Feige filed three separate Chapter 13 petitions in bankruptcy court.  All three petitions were ultimately dismissed.  Shortly after filing her third Chapter 13 petition in June 2014, Feige removed the state court matrimonial action, which had been pending in state court since 2004, to the Bankruptcy Court.  (That removal ultimately culminated in the filing of the instant suit).  As the Judicial Defendants point out, Feige's June 2014 Chapter 13 filing (and the removal of the state court matrimonial action) appear to have been brought vexatiously in an effort to frustrate the proceedings that were ongoing in the state court action.  Feige currently has a Chapter 7 proceeding pending in Bankruptcy Court.  (In re Feige Zaretsky, 8-16-71614 (Bankr. E.D.N.Y.).)

Feige and Berlin have also brought four suits in federal district court, including the instant case.  In 2010, Feige and Berlin sued thirty defendants—including the Zaretskys, Maxi-Aids, attorneys who had represented those defendants, and the United States Department of the Treasury—alleging RICO violations and causes of action under state law.  (Zaretsky et al v. Maxi-Aids, Inc. et al, 10-CV-03771 (E.D.N.Y.).)  At the outset of that action, the court stayed discovery "due to the questionable merit" of the litigation and directed the plaintiffs to file a "RICO case statement."  (Report and Recommendation dated October 13, 2011, at 2, Zaretsky et al v. Maxi-Aids, Inc. et al, 10-CV-03771, ECF No. 88.)  After numerous delays and the plaintiffs' filing of an untimely and incomplete RICO case statement, the court dismissed the RICO claims with prejudice under Federal Rules of Civil Procedure 16(f) and 41(b), and dismissed the state law claims without prejudice.  (Id.; June 18, 2012 Order, Zaretsky et al v. Maxi-Aids, Inc. et al, 10-

CV-03771, ECF No. 104.)  That dismissal was affirmed by the Second Circuit.  <u>Zaretsky v. Maxi-Aids, Inc.</u>, 529 F. App'x 97 (2d Cir. 2013).

In 2014, Feige and Berlin filed another action in district court alleging violations of RICO and other assorted claims against over thirty defendants, including the Zaretskys, Maxi-Aids, their attorneys, and three state court judges.  (<u>Berlin et al v. Maxi-Aids, Inc. et al</u>, 14-CV-03028-JMA-AYS (E.D.N.Y.).)  After the state court judges served a motion to dismiss on Feige and Berlin, they voluntarily dismissed their claims against the judges.  (<u>Berlin et al v. Maxi-Aids, Inc. et al</u>, 14-CV-03028, ECF No. 13.)  Feige and Berlin ultimately dismissed all of their claims against the remaining defendants after a number of the defendants served motions to dismiss.  (<u>See</u> <u>Berlin et al v. Maxi-Aids, Inc. et al</u>, 14-CV-03028, ECF Nos. 65–69.)  Pursuant to the Court's "bundling rule," these motions were never filed with the Court because the suit was dismissed before the motions were fully briefed.

In September 2015, Berlin and Feige filed the instant suit.  At a pre-motion conference held on January 28, 2016, the Court warned plaintiffs that this action appeared frivolous and that the Court would consider awarding defendants costs for making any motions for dismiss.  (1/28/2016 Tr., ECF No. 19.)  Plaintiffs were instructed to inform the Court within a week whether they wished to continue to pursue their claims.  Plaintiffs, however, failed to do so.  Only after the Court issued an order on May 27, 2016—which threatened to dismiss this action with prejudice for failure to prosecute— did plaintiffs respond.  In a letter dated June 8, 2016, plaintiffs informed the Court that they still wished to pursue this action and asserted that they had failed to timely respond to the Court's earlier directive because the plaintiffs were engaged in "settlement negotiation."  (ECF No. 20.)  The Attorney Defendants informed the Court, however, that no such settlement discussions had taken place with plaintiffs after the Court held the pre-motion conference on

January 28, 2016.  As discussed in pages 4 through 15 supra, the Court is dismissing plaintiffs'

complaint in instant action because it fails to state any plausible claims against the defendants.

In June 2017, plaintiffs filed another related suit in this Court naming the Zaretskys, their

attorneys, and other assorted defendants, including a state court judge and an attorney who was

appointed to represent Feige in state court.  (Zaretsky et al v. Maurer et al, 17-CV-03786-JMA-

AYS (E.D.N.Y.).)  The complaint attempts to allege various claims concerning, inter alia, ongoing

contempt proceedings against Feige in state court.  The defendants in the suit have filed pre-motion

conference letters requesting permission to file motions and for filing injunctions against the

plaintiffs.  In a letter requesting an extension of time to respond to these letters, plaintiffs admitted

that the complaint, which is nearly 90 pages long, "was filed in a hurry and was only a first draft

without having had a chance to review and perfect" and contained "mistakes."  (Zaretsky et al v.

Maurer et al, 17-CV-03786, ECF No. 12.)  The Court has not yet held a pre-motion conference in

that action.

In these actions, plaintiffs were not represented by counsel.  However, all of the other

relevant factors that courts must consider in determining the propriety of a filing injunction weigh

against plaintiffs in light of the plaintiffs' litigation history set forth above.  Plaintiffs have filed a

number of "vexatious, harassing, or duplicative" suits, claims, and other filings for which the

plaintiffs did not have an objective good faith expectation of prevailing.  Some of those suits,

claims and filings appear to have been strategic actions that were brought in order to hinder and

delay state court proceedings involving plaintiffs.  Plaintiffs have filed a number of suits, claims,

and other filings that have resulted in parties incurring needless expense and have imposed an

unnecessary burden on court personnel.  There is a pattern of plaintiffs running to federal district

court to allege implausible and wide-ranging conspiracies whenever a judge rules against them

against in state court. Finally, the Court does not believe that other sanctions would be adequate to protect the courts and the other parties. Monetary sanctions seem unlikely to deter plaintiffs given that the Zaretskys have already obtained a $1.2 million judgment against plaintiffs, which Berlin was unable to discharge in bankruptcy.[4] It appears that Feige is currently litigating the dischargeability of that judgment against her before the Bankruptcy Court.

Plaintiffs are hereby enjoined from filing, without the Court's written permission, any further complaint or other initial pleading in the United States District Court for the Eastern District of New York against: (1) Goldman & Maurer, LLP and any of its partners, attorneys or other employees; and (2) any state judicial officer or state court employee, including law clerks and law secretaries. Before making any filing covered by this injunction, plaintiffs must first file with this Court a motion requesting permission to file along with a copy of the document that plaintiffs propose to file. Any such motions must be filed on the instant docket, Berlin v. Meijias, 15-CV-5308 (E.D.N.Y.). Feige currently has three cases pending in Bankruptcy Court. (See In re Zaretsky, No. 8-16-71614 (Bankr. E.D.N.Y.); Zaretsky et al. v. Zaretsky, No. 8-16-08110 (Bankr. E.D.N.Y.); Zaretsky v. Zaretsky et al., No. 8-17-08108 (Bankr. E.D.N.Y.).) This filing injunction does not cover any appeal that Feige may file from these three bankruptcy cases.

**Plaintiffs are ORDERED to SHOW CAUSE by _October 31, 2017_ why this Court should not extend the filing injunction above to preclude plaintiffs from filing in the United States District Court for the Eastern District of New York any further complaint or initial pleading against _any person or entity_ without the Court's prior written permission. Plaintiffs shall respond to this ORDER TO SHOW CAUSE in writing. Failure to respond to this ORDER TO SHOW CAUSE by _October 31, 2017_ will result in an injunction**

---

[4] Given this finding and the court's imposition of a filing injunction, the Court declines to award the Attorney Defendants costs for making their motion to dismiss.

**precluding plaintiffs from filing in the United States District Court for the Eastern District of New York any further complaint or other initial pleading against <u>any person or entity</u> without the Court's prior written permission.**

### III.  CONCLUSION

For the reasons stated above, the Court grants the defendants' motions to dismiss and imposes the filing injunction set forth above.

The Clerk of Court is directed to close this case and to mail a copy of this Order to the <u>pro se</u> plaintiffs.

**SO ORDERED.**

Date:  September 30, 2017
      Central Islip, New York

                                        _____/s/_(JMA)_____
                                          Joan M. Azrack
                                          United States District Judge